■ ICILDA VERONICA DOYLEY, Respondent, v THOMAS D. STEINER et al., Appellants, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Sued Herein as CON EDISON CORP., Respondent. [967 NYS2d 704]—

Order, Supreme Court, Bronx County (Alison Y. Tuitt, J.), entered April 9, 2012, which denied defendants Thomas D. Steiner and Maureen Ferguson's motion for summary judgment dismissing the complaint and all cross claims as against them, affirmed, without costs.

Defendant property owners failed to establish, as a matter of law, that they had no duty to maintain the electrical shunts that defendant Con Edison placed across the sidewalk in front of their property to provide emergency power for the tenants residing there. We have generally held that an issue of fact exists whether such equipment constitutes a special use of the sidewalk that creates a duty of care on the part of the property owner (*see e.g. Cook v Consolidated Edison Co. of NY, Inc.*, 51 AD3d 447 [1st Dept 2008]; *Eliassian v Consolidated Edison Co. of N.Y.*, 300 AD2d 51 [1st Dept 2002]).

*Lewis v City of New York* (89 AD3d 410 [1st Dept 2011]) has

no bearing on this matter. There, this Court awarded summary judgment to the property owner, finding that it was prohibited from exercising control over a street grating and therefore bore no liability for the plaintiff's accident. The rule at issue there, 34 RCNY 2-07 (b), squarely places responsibility for gratings and the area extending 12 inches from their perimeter on their owners.

In this case, it is far less certain whether the rules on which the property owners rely apply and would relieve them of liability. Those rules prohibit private citizens from "install[ing], repair[ing], us[ing] or work[ing] within three (3) feet of any type of City electrical equipment or non-City electrical equipment attached to City Property" (34 RCNY 2-20 [a] [2]). They further direct that "[n]o person shall break, deface, remove, or interfere with any lamp, gas, communication or electrical apparatus, or any part thereof, which shall be hung or fixed in any street or public place . . . except as authorized by the Department [of Transportation]" (34 RCNY 2-20 [a] [7]). The critical question here is whether a shunt is "electrical equipment" or an "electrical apparatus." The rules define "electrical equipment," when not owned by the City, as "property . . . which is attached to City Property and to which electrical connections can be made, including but not limited to, electrical devices and wood poles" (34 RCNY 2-01). The rules do not provide a definition for "electrical apparatus," but that term and the term "electrical equipment" appear to be used interchangeably, since 34 RCNY 2-20 (a) (7), while prohibiting the destruction of "any lamp, gas, communication or electrical apparatus," also directs that "[a]ll instances of damaged gas, communication or electrical equipment shall be reported to . . . 311."

The property owners offer no support for their theory that the shunts on which plaintiff allegedly tripped constituted "electrical equipment," and so have failed to carry their burden of establishing, as a matter of law, that they were prohibited from working within three feet of them, or otherwise "interfering" with them. Indeed, 34 RCNY 2-20 (b), which addresses the placement of shunts, suggests that a shunt is not "electrical equipment." That rule specifically applies "to overhead, street and wrap-around shunts *attached to City electrical equipment* or running over/along a roadway or sidewalk" (34 RCNY 2-20 [b] [1] [emphasis added]).

The italicized words strongly suggest that a shunt itself does not qualify as "electrical equipment," whether of the City or non-City variety. To the contrary, the term "electrical equipment" seems to connote permanent infrastructure. For example,

34 RCNY 2-20 (c) (3) addresses "the event that the Department installs an overhead shunt to restore power to City electrical equipment containing an electrical traffic control device." Further evidence that the term "electrical equipment" refers to fixtures is that "street shunt" is defined as "a shunt that runs from a street light/lamppost or utility access cover along a roadway and/or sidewalk to a property or other street light/lamppost" (34 RCNY 2-01). Significantly, the definition of "City Electrical Equipment" explicitly encompasses "wood poles and metal street light/lampposts" (34 RCNY 2-01). It is important to note that there is little concrete evidence in the record regarding what the shunt plaintiff tripped over was attached to. The witness produced by Con Edison read from records that he interpreted as possibly reflecting that the shunts were connected to a "service box" in the street, but he was unable to discuss in technical terms how power was restored to the house.

Accordingly, the record is devoid of any evidence that the property owners would have had to access "electrical equipment" to make safe the tripping hazard posed by the shunts. And while we are certainly not suggesting that ordinary homeowners should ever be required to tamper with shunts or move them, that was not required here, where plaintiff is only alleging that a protective board or other device covering up the shunts was required, which device defendants could, at the very least, have easily requested Con Edison to provide. In any event, even if a shunt is "electrical equipment," nothing in the rules appears to have prohibited the property owners from taking steps to warn pedestrians about the hazard posed by the shunts in a manner that did not involve working within three feet of them or "interfering" with them in any respect.

Like the property owners, the dissent declares that the shunts over which plaintiff tripped were "electrical equipment" for purposes of 34 RCNY 2-20, without offering any support for that conclusion that can be found in the record or elsewhere. Again, the Con Edison witness on whose deposition testimony the dissent relies was a record searcher who readily admitted that he was unfamiliar with the technical jargon related to the manner in which power was restored to the property in question. Further, we disagree with the dissent's statement that the utility that places shunts on a sidewalk has the sole responsibility to protect pedestrians from tripping over them. The rules that the dissent cites in support of that proposition do not say that. 34 RCNY 2-20 (b) (7) merely provides that "[t]he sidewalk areas over which the shunt runs and all wires shall be protected and ramped with a reflective covering." 34 RCNY 2-05 (d) (17)

only says that "[a]ll equipment hoses, cables, or wires placed on the sidewalk while in use shall be bridged and protected by warning signs and/or lights." Nothing in those rules even implies that utilities have exclusive control over sidewalk shunts so that homeowners deriving a special use from them have no obligation to protect pedestrians from harm posed by the shunts. Thus, because there is a question regarding the extent to which the property owners had control over the shunts, which the property owners acknowledge were for their benefit, an issue of fact exists whether they made special use of them and thus created an obligation to prevent harm arising from the hazard (see Cook, 51 AD3d at 448; Eliassian, 300 AD2d at 51).

Finally, we reject the property owners' argument that, even if they had control over the shunts, they had no duty to maintain the condition, pursuant to section 7-210 of the Administrative Code of the City of New York. That section states that "[f]ailure to maintain [a] sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags and the negligent failure to remove snow, ice, dirt or other material from the sidewalk." (Administrative Code § 7-210 [a].) We have previously stated that the tripping hazard posed by electrical shunts traversing a sidewalk implicates the Administrative Code (see Cook, 51 AD3d at 448). Accordingly, the property owners had a nondelegable duty to keep the sidewalk safe (see id.; Collado v Cruz, 81 AD3d 542 [1st Dept 2011]). Concur—Mazzarelli, J.P., DeGrasse, Richter and Clark, JJ.

Andrias, J., dissents in a memorandum as follows: Plaintiff alleges that she tripped over a shunt (a temporary electrical cable) that defendant Con Edison placed across the sidewalk in front of defendant owners' townhouse in order to restore electric power to the building. Although photographs taken by plaintiff a couple of days after the accident showed that there were black and orange covers over the shunt, plaintiff testified at her deposition that the covers were not there when she tripped.

The owners moved for summary judgment dismissing the complaint and cross claims against them on the ground that they could not be held liable under a "special use" theory because they did not have control over the shunt. They also asserted that even if they had control, they could not be held liable because a sidewalk shunt does not fall within the scope of the "Sidewalk Law" (Administrative Code of City of NY § 7-210), which, with certain exceptions, shifts responsibility for sidewalk maintenance and liability for injuries arising from a

defective sidewalk from the City to the owner of the real property which abuts the defective sidewalk.

Supreme Court denied the owners' motion. The majority would affirm on the ground that the Sidewalk Law applies and a question of facts exists whether the shunt constituted a special use of the sidewalk that created a duty of care on the part of the owners. Because I believe that the owners established that they may not be held liable under a special use theory of liability, I dissent and would grant their motion for summary judgment.

"[W]here the abutting landowner derives a special benefit from that [public property] unrelated to the public use, the person obtaining the benefit is required to maintain the used property in a reasonably safe condition to avoid injury to others" (*Kaufman v Silver*, 90 NY2d 204, 207 [1997] [internal quotation marks omitted and emphasis deleted]). "Imposition of the duty to repair or maintain a use located on adjacent property is necessarily premised, however, upon the existence of the abutting land occupier's access to and ability to exercise control over the special use structure or installation" (*id.*).

Pursuant to 34 RCNY 2-20 (a) (2), "[o]nly public utilities, public benefit corporations, City agencies or licensed and insured contractors shall be permitted to install, repair, use or work within three (3) feet of any type of City electrical equipment or non-City electrical equipment attached to City Property." Pursuant to 34 RCNY 2-20 (a) (7), "[n]o person shall break, deface, remove, or interfere with any lamp, gas, communication or electrical apparatus, or any part thereof, which shall be hung or fixed in any street or public place . . . except as authorized by the Department [of Transportation]."

By virtue of these rules, Con Edison, the utility performing the emergency repair work to restore power to the townhouse, had exclusive maintenance responsibility over its shunt. The owners had no control over the shunt and were bound by 34 RCNY 2-20 not to interfere with it. Lacking control, the owners may not be held liable for any special use of the shunt that may have caused plaintiff's fall (*see Noia v Maselli*, 45 AD3d 746 [2d Dept 2007]). Although the Sidewalk Law generally imposes liability for injuries resulting from negligent sidewalk repair on the abutting property owners, it is inapplicable as against the owners because 34 RCNY 2-20 mandates that liability be placed on another party (*see Lewis v City of New York*, 89 AD3d 410 [1st Dept 2011]; *Hurley v Related Mgt. Co.*, 74 AD3d 648 [1st Dept 2010]).

Positing that "electrical equipment" and "electrical appara-

tus" are interchangeable, the majority finds that it is uncertain whether 34 RCNY 2-20 would relieve the owners of liability since the owners offered no support for their theory that street shunts constitute "electrical equipment." However, the majority interprets the terms "electrical equipment" and "electrical apparatus" too narrowly.

34 RCNY 2-01 defines a "shunt" as a "temporary electrical cable or conduit that has been installed between two points to divert current from one path, which is no longer in use, to another path." The rule defines a "street shunt" as "a shunt that runs from a street light/lamppost or utility access cover along a roadway and/or sidewalk to a property or other street light/lamppost." "City Electrical Equipment" means "city property to which electrical connections can be made, including but not limited to, electrical devices, wood poles and metal street light/lampposts" (34 RCNY 2-01). "Non-city Electrical Equipment" means "property, not owned by the City, which is attached to City Property and to which electrical connections can be made, including but not limited to, electrical devices and wood poles" (*id.*) City property includes but is not limited to "roadways, sidewalks, street furniture and electrical equipment" (*id.*). "Electrical apparatus" is not defined.

Con Edison's witness explained that a shunt is made up of wires that feed power to a house from a central feeder location. It is undisputed that Con Edison installed the shunt two days before the accident, to restore electrical power to the premises on an emergency basis, after it received a call from the owners' tenant stating that the townhouse had lost electric power, which also left the tenant without heat or hot water. The cause of the problem was not within the townhouse, and the shunt, which ran from an external power source in the adjacent street, across the sidewalk, and into the basement of the townhouse, was part of the "non-city electrical equipment" used to restore power. The placement of the shunt across the sidewalk as part of an emergency repair also falls well within the ambit of an "electrical apparatus, *or any part thereof* . . . hung or fixed in any street or public place" (34 RCNY 2-20 [a] [7] [emphasis added]).

While recognizing that ordinary homeowners should not be required to tamper with shunts or move them, the majority states that "that was not required here, where plaintiff is only alleging that a protective board or other device covering up the shunts was required," and that "nothing in the rules . . . prohibited the property owners from taking steps to warn pedestrians about the hazards posed by the shunts." However, pursuant to 34 RCNY 2-20 (b) (7), "[t]he sidewalk areas over

which the shunt runs and all wires shall be protected and ramped with a reflective covering." 34 RCNY 2-05 (d) (17) requires that "[a]ll equipment hoses, cables, or wires placed on the sidewalk while in use shall be bridged and protected by warning signs and/or lights." Thus, the rules clearly place the obligations to cover the shunt and warn the public on the utility that installs the shunt. While 34 RCNY 2-20 (a) (7) requires that "[a]ll instances of damaged gas, communication or electrical equipment shall be reported to the 311 Government Services & Information for New York City telephone number and/or the contact telephone number on any applicable permits," there is no allegation here that the shunt was damaged.

I am cognizant that in *Eliassian v Consolidated Edison Co. of N.Y.* (300 AD2d 51 [1st Dept 2002]) and *Cook v Consolidated Edison Co. of NY, Inc.* (51 AD3d 447 [1st Dept 2008]) this Court found a triable issue of fact whether the placement of shunt boards constituted a special use of the sidewalk by the owner giving rise to a duty on the owner's part to maintain the provisional sidewalk structure. However, neither decision addressed the requirement that the owner have the ability to exercise control over the installation (*see Kaufman*, 90 NY2d at 207-208), or 34 RCNY 2-20, which went into effect October 27, 2010. Further, in *Cook* the shunt boards were in place for nearly six months, and the denial of summary judgment was also predicated on triable issues of fact whether the tenant had constructive notice of a recurring defective condition which was routinely left unaddressed (51 AD3d at 448).